# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD SCHUENEMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ARENA PHARMACEUTICALS, INC., JACK LIEF, ROBERT E. HOFFMAN, DOMINIC P. BEHAN, WILLIAM R. SHANAHAN, and CHRISTY ANDERSON,<br><br>Defendants. | Case No. 10cv1959 BTM(BLM)<br><br>**ORDER GRANTING MOTIONS TO CONSOLIDATE CLASS ACTIONS; DENYING MOTION TO CONSOLIDATE SHARP ACTION; APPOINTING CARL SCHWARTZ AS LEAD PLAINTIFF, AND APPROVING CARL SCHWARTZ'S CHOICE OF LEAD COUNSEL** |
| WILLIAM SUTLIFF and JEAN SUTLIFF, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ARENA PHARMACEUTICALS, INC., JACK LIEF and WILLIAM SHANAHAN, JR.,<br><br>Defendants. | 10cv1961 BTM(BLM) |

| | |
|---|---|
| WILLIAM PRATT, Individually and on Behalf of All Others Similarly Situated,<br><br>                                  Plaintiff,<br><br>     v.<br><br>ARENA PHARMACEUTICALS, INC., JACK LIEF, ROBERT E. HOFFMAN, DOMINIC P. BEHAN, WILLIAM R. SHANAHAN, and CHRISTY ANDERSON,<br><br>                                  Defendants. | 10cv1977 BTM(BLM) |
| CRAIG RUBENSTEIN, Individually and on Behalf of All Others Similarly Situated,<br><br>                                  Plaintiff,<br><br>     v.<br><br>ARENA PHARMACEUTICALS, INC., JACK LIEF, ROBERT E. HOFFMAN, DOMINIC P. BEHAN, WILLIAM R. SHANAHAN, and CHRISTY ANDERSON,<br><br>                                  Defendants. | 10cv1984 BTM(BLM) |
| RODNEY VELASQUEZ, on behalf of himself and all others similarly situated,<br><br>                                  Plaintiff,<br><br>     v.<br><br>ARENA PHARMACEUTICALS, INC., JACK LIEF, ROBERT E. HOFFMAN, DOMINIC P. BEHAN, WILLIAM R. SHANAHAN, and CHRISTY ANDERSON,<br><br>                                  Defendants. | 10cv2026 BTM(BLM) |

| | | |
|---|---|---|
| THONG VU, Individually and on Behalf of All Others Similarly Situated,<br><br>                         Plaintiff,<br><br>     v.<br><br>ARENA PHARMACEUTICALS, INC., JACK LIEF, ROBERT E. HOFFMAN, DOMINIC P. BEHAN, WILLIAM R. SHANAHAN, and CHRISTY ANDERSON,<br><br>                         Defendants. | 10cv2086 BTM(BLM) | |
| GEORGE SHARP,<br><br>                         Plaintiff,<br><br>     v.<br><br>ARENA PHARMACEUTICALS, INC., JACK LIEF, ROBERT E. HOFFMAN, DOMINIC P. BEHAN, WILLIAM R. SHANAHAN, JR., and CHRISTY ANDERSON, and DOES 1 THROUGH 50, inclusive,<br><br>                         Defendants. | 10cv2111 BTM(BLM) | |
| ARIC D. JACOBSON, Individually and on Behalf of All Others Similarly Situated,<br><br>                         Plaintiff,<br><br>     v.<br><br>ARENA PHARMACEUTICALS, INC., JACK LIEF, ROBERT E. HOFFMAN, DOMINIC P. BEHAN, WILLIAM R. SHANAHAN, and CHRISTY ANDERSON,<br><br>                         Defendants. | 10cv2335 BTM(BLM) | |

Plaintiffs in the above-titled class actions ("Class Actions") have filed motions to consolidate the cases. Defendants have filed a motion to consolidate the Class Actions along with <u>Sharp v. Arena Pharmaceuticals, Inc.</u>, 10cv2111 BTM(BLM), an individual action. Also pending before the Court are competing motions for appointment as lead plaintiff and approval of selection of lead counsel filed by Carl Schwartz, Babak Ghayour, John Lee,

Anthony Caravella, Chris Georgakopoulos and Larry Sprowl, Ford L. Williams, and "Arena Investors Group."  For the reasons discussed below, the Court **GRANTS** the motions to consolidate the Class Actions and **DENIES** Defendants' motion to consolidate the <u>Sharp</u> action. The Court **GRANTS** Schwartz's motion for appointment as lead plaintiff and approval of lead counsel and **DENIES** the competing motions.

## I. BACKGROUND

All of these actions are brought by purchasers of Arena securities who allege that Defendants artificially inflated the price of Arena securities by making misrepresentations and failing to disclose material information regarding the safety and efficacy of Arena's new weight-loss drug, Lorcaserin.

Lorcaserin (lorcaserin hydrochloride), an experimental weight-loss drug that had completed a pivotal Phase III clinical trial program, was Arena's principal drug in development. Plaintiffs allege that starting in or around December 2008, Defendants began making false and misleading public statements about the safety and efficacy of Lorcaserin.

In December 2009, Arena submitted a New Drug Application ("NDA") for Lorcaserin to the FDA. On September 14, 2010, the FDA issued a briefing document that questioned both the safety and efficacy of Lorcaserin. Most significantly, the briefing document revealed that rats treated with Lorcaserin for up to two years developed malignant mammary tumors and other types of tumors. Investors were not previously aware of the rat carcinogenicity study results. After the FDA issued its briefing document, Arena common stock plummeted, closing at $4.13 per share on September 14, 2010 (a one day decline of 40% on high volume).

On September 16, 2010, the FDA advisory panel voted 9 to 5 against approval of Lorcaserin based on concerns regarding the efficacy of the drug and potential safety concerns, including cancer.

Trading of Arena stock was halted on September 16, 2010, pending the outcome of the advisory panel hearing. On September 17, 2010, the price of Arena stock fell another

$1.75 per share to close at $1.99 per share (a one-day decline of over 46% on high volume).

The Class Period for purposes of this motion (i.e., the most inclusive class period) is from December 8, 2008 through September 17, 2010.

## II. DISCUSSION

A. Consolidation

Consolidation is appropriate when there is a "common question of law or fact . . . pending before the Court." Fed. R. Civ. P. 42(a). Class action shareholder suits in particular are "ideally suited to consolidation because their unification expedites proceedings, reduces duplication, and minimizes the expenditure of time and money by all concerned." Mohanty v. BigBand Networks, Inc., 2008 WL 426250, at *3 (N.D. Cal. Feb. 14, 2008).

Consolidation of the Class Actions is appropriate.  The Class Actions present the same factual and legal issues.  Each class action alleges violations of federal securities laws, including §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5.  Each class action also names as defendants Arena as well as officers of Arena, including Jack Lief, Robert E. Hoffman, Dominic P. Behan, William R. Shanahan, Jr., and Christy Anderson.  Class Action Plaintiffs and Defendants are in agreement that the Class Actions should be consolidated. Therefore, the Court grants the motions to consolidate the Class Actions.

Defendants also wish to consolidate the Sharp action with the Class Actions.  The Sharp action arises out of the same facts and involves similar legal issues.  However, Sharp is not a class action and involves state claims only.  Although it would not be improper for the Court to consolidate Sharp with the Class Actions, the Court believes that consolidation is not necessary at this time.  The Court will, however, order the Magistrate Judge to coordinate discovery in the Sharp case and the Class Actions and to also coordinate briefing schedules and other case management dates as the Magistrate Judge sees fit.  This course of action addresses Defendants' concerns regarding duplicated efforts and the danger of inconsistent rulings while allowing Mr. Sharp to pursue his individual action without being subjected to class action proceedings that do not pertain to him.

B.  Lead Plaintiff

Motions to be appointed as lead plaintiff have been filed by: (1) Carl Schwartz; (2) Babak Ghayour; (3) John Lee; (4) Anthony Caravella; (5) Chris Georgakopoulos; (6) Larry Sprowl; (7) Ford L. Williams; and (8) "Arena Investors Group" (Michael J. Corbi, Serge and Sebouh Serabian, Mark Finkelstein, and Guztavo Soto).  For the reasons discussed below, the Court appoints Carl Schwartz as lead plaintiff.

1.  Governing Law

Under the Private Securities Litigation Reform Act ("PSLRA"), no later than 20 days after filing a class action securities complaint, a private plaintiff or plaintiffs must publish a notice advising members of the purported plaintiff class of the pendency of the action, the claims asserted, and that any member of the purported class may move the court to serve as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.  Id.

Within 90 days after publication of the notice, the Court shall consider any motion made by a class member to serve as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  The Court shall appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  Id.

The presumptively most adequate plaintiff is the one who "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  "In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit.  It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'"  In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002).

The presumption that a plaintiff is the most adequate lead plaintiff may be rebutted only upon proof by a member of the purported plaintiff class that the plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  If the district court determines that the presumptive lead plaintiff does not meet the typicality or adequacy requirement, the court must then proceed to determine whether the plaintiff with the next lower stake in the litigation has made a prima facie showing of typicality and adequacy.  Cavanaugh, 306 F.3d at 731.  If so, that plaintiff becomes the presumptive lead plaintiff and other plaintiffs must be given the opportunity to rebut that showing.  Id.

A straightforward application of the statutory scheme "provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." Cavanaugh, 306 F.3d at 732.  Once the Court identifies the plaintiff with the largest stake in the litigation, "further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements." Id.

### 2. Lead Plaintiff Analysis

#### a. Financial Interest

There is no prescribed method for determining which movant has the largest "financial interest."  The Ninth Circuit notes that "the court may select accounting methods that are both rational and consistently applied." Cavanaugh, 306 F.3d at 730 n. 4.

As discussed in Perlmutter v. Intuitive Surgical, Inc., 2011 WL 566814, at *3-11 (N.D. Cal. Feb. 15, 2011), some courts equate financial interest with actual economic losses suffered, while others look to potential recovery. Courts that focus on potential recovery place the greatest weight on the number of net shares purchased during the class period and disregard losses and gains resulting from trades that occurred prior to disclosure of the defendant's alleged fraud.  Id. at * 6.  In contrast, courts that look to actual economic loss

consider the approximate losses suffered by the movants during the Class Period, using either a first in, first out method ("FIFO") or last in, first out method ("LIFO"). Id. at * 10.

This Court falls within the group of courts that focus on potential recovery. See Ruland v. Infosonics Corp., 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006). As discussed in Ruland, in Dura Pharm., Inc. v. Broudo, 544 U.S. 336 (2005), the Supreme Court drew a distinction between economic losses and recoverable damages. The Supreme Court explained that an inflated purchase price due to deception or misrepresentation does not in and of itself constitute or proximately cause the relevant economic loss. At the moment the transaction takes place, the plaintiff has suffered no loss because the inflated purchase payment is offset by ownership of a share that *at that instant* possesses equivalent value. Id. at 343. If the purchaser sells the shares before the truth becomes known, the misrepresentation will not have led to any loss. Id. Accordingly, for purposes of evaluating financial interest, it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed.

The Court adopts the retained share methodology, which looks to the number of retained shares at the end of the class period. Ruland, 2006 WL 3746716, at *6. Under the retained share methodology, the purchase price of the retained shares is subtracted from either (1) the average of the daily closing price of the stock during the 90 day period beginning at the end of the class period (if the share was not sold during the 90 day period) or (2) the higher of the actual sale price or an average of the daily closing price from the end of the class period to the date of sale (if a share was sold within the 90 day period). Eichenholtz v. Verifone Holdings, Inc., 2008 WL 3925289, at * 4 (N.D. Cal. Aug. 22, 2008). The purchase price is calculated based either on the purchase price of shares purchased at the beginning of the class period or the purchase price of shares purchased most recently, but within the class period. Id. at * 4.

///
///
///

The movants in this action do not dispute that the plaintiff with the greatest financial interest is either Babak Ghayour or Carl Schwartz. The chart below summarizes the information provided by Ghayour and Schwartz:

| Lead Plaintiff Movant | Shares/Contracts purchased | Net Shares/Contracts purchased | Net Funds Expended | Total Estimated Loss |
|---|---|---|---|---|
| Carl Schwartz | 659,954 shares and 6,900 call options | 450,400 shares | $2,326,153.06 | $1,598,690.51 |
| Babak Ghayour | 357,577 shares and sold 57,200 call options | 148,010 shares | $1,857,879 | $1,627,447.72 |

The total estimated loss figures provided by Schwartz and Ghayour are based on economic loss sustained during the Class Period and take into account losses and gains made on trades before September 17, 2010. Neither Schwartz nor Ghayour apply the retained share methodology. However, "[a]t least as a first approximation, the candidate with the most net shares purchased will normally have the largest potential damage recovery." In re Network Associates, Inc., Sec. Litig., 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999). Schwartz has a significantly greater number of retained shares than Ghayour. Accordingly, the Court concludes that Schwartz has the greatest potential recovery and the greatest financial interest.

b. Typicality and Adequacy

Claims are "typical" under Rule 23 if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). Schwartz's claims arise out of the same events and are based on the same legal theories as the claims of the other class members. Therefore, Schwartz satisfies the "typicality" requirement.

Representation is "adequate" when the representative's interests are not antagonistic

to the interests of absent class members, it is unlikely that the action is collusive, and counsel for the class is qualified and competent. In re Northern Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig., 693 F.2d 847, 855 (9th Cir. 1982). It appears that Schwartz, whose interests are closely aligned with those of the other class members, is willing and able to serve as lead plaintiff and has incentive to vigorously prosecute these actions. There is no showing that there is collusive action, and Schwartz's retained counsel, Kaplan Fox & Kilsheimer LLP, is clearly qualified and competent. Therefore, Schwartz is the presumptive lead plaintiff under the PSLRA.

The presumption that Schwartz is the most adequate lead plaintiff may be rebutted only upon proof by a member of the purported plaintiff class that Schwartz will not fairly and adequately protect the interests of the class or is subject to unique defenses that render him incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Both Lee and Ghayour attempt to rebut the presumption.

Movant John Lee contends that Schwartz falls short of meeting the adequacy requirement because he did not suffer any losses in his purchase of call options of Arena. Lee claims that he has the largest financial loss in connection with option transactions and asks the Court to appoint him as co-lead-plaintiff to protect the interests of class members who suffered call options losses.

The Court is not persuaded by Lee's argument. The lead plaintiff does not need to have standing to sue on all causes of action raised in the underlying class complaints. Havesi v. Citigroup Inc., 366 F.3d 70, 82 (2d Cir. 2004). Being a lead plaintiff is not the same thing as being a class representative, and additional named plaintiffs may be added later to represent subclasses of plaintiffs with distinct interests or claims. Id. at 83.

In Fishbury, Ltd. v. Connetics Corp., 2006 WL 3711566 (S.D.N.Y. Dec. 14, 2006), the court rejected the same argument that Lee raises here. In Fishbury, a movant for lead plaintiff argued that the presumptive lead plaintiff purchased and sold only common stock during the relevant class period and therefore could not adequately represent the interests of the class, which included purchasers of call options. The court held that issues regarding

future standing or class-certification issues did not establish the inadequacy of the presumptive lead plaintiff:

> If certain class claims cannot be advanced because of standing or class-certification issues, this deficiency can be corrected by the designation of other members of the purported class as named plaintiffs or class representatives. Hevesi, 366 F. 3d at 83; In re Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d 189, 204-05 (S.D.N.Y.2003); In re Initial Pub. Offering, 214 F.R.D. at 123. In fact, the lead plaintiff in a securities class action has "a responsibility to identity [sic] and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff who may be determined, at the class certification stage, to have distinct interests or claims." In re Global Crossing, 313 F. Supp. 2d at 205. Therefore, Fishbury's speculation about potential class standing problems should not be resolved by the appointment of multiple lead plaintiffs, as Fishbury contends, but by the appointment, if necessary and desirable, of additional class representatives as the litigation proceeds. Id.; Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 254 (S.D.N.Y.2003).

Fishbury, 2006 WL 3711566, at * 4.

Ghayour argues that Schwartz is an inadequate lead plaintiff because his PSLRA certification was defective. Under 15 U.S.C. § 78u-4(a)(2)(A), a plaintiff seeking to serve as lead plaintiff must provide a sworn certification that, among other things, "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified." Ghayour points to eight specific transactions included in Schwartz's certification that list purchase prices that exceed the daily range for Arena stock on the date of the alleged trade (as well as the high trading price of $8.00 per share for Arena stock during all of 2010). Schwartz explains that the certification was based on his account statements that were prepared by his broker for tax purposes. (Schwartz Decl. of 1/7/11 (Ex. B to King Decl.), ¶ 3.) The price per share for these eight transactions included certain tax adjustments (as required by the IRS) to the purchase price to account for shares sold at a loss within 30 days of a new purchase of the same security (a "wash sale"). Id.

The Court finds that Schwartz's oversight with respect to the wash-sale adjustments does not render his certification unreliable. The number of wash-sale transactions is small, Schwartz's explanation for the inaccuracy is reasonable, and there is no showing that he acted in bad faith. Furthermore, the Court bases its finding that Schwartz is presumptive lead plaintiff on the number of net shares purchased, which is not disputed by Ghayour.

Ghayour also argues that Schwartz is inadequate because he is subject to the unique defense that he is a "day-trader" and thus did not necessarily rely on any statements made by Defendants. The Court is not persuaded by this argument either.

Some courts have found the presumption of adequacy rebutted when there is evidence that the lead plaintiff engaged in high volume day-trading. For example, in Applestein v. Medivation Inc., 2010 WL 3749406, at * 3 (N.D. Cal. Sept. 20, 2010), the presumptive lead plaintiff engaged in 407 trades over a 644 day period and engaged in as many as 44 trades in a single day. The court held that although there was perhaps insufficient evidence that the presumptive lead plaintiff was "a day-trader *qua* day-trader," his trading activity raised "serious concerns about his typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions made by Medivation." Id. See also Tsirekidze v. Syntax-Brillian Corp., 2008 WL 942273, at * 4 (D. Ariz. Apr. 7, 2008) (holding that principal member of an investor group who had an "unusually active" trading history, making as many as 80 separate transactions of Syntax-Brillian stock in a single day, "might be subject to the unique defense that frantic trading belies any true reliance on company reports or even on the integrity of the stock price itself.")

Other courts have held that the presumptive lead plaintiff's status as a "day trader" does not rebut the presumption of adequacy. In In re Host America Corp. Sec. Litig., 236 F.R.D. 102, 108 (D. Conn. 2006), the court explained:

> Many courts have concluded that the fact that a candidate for lead plaintiff engaged in day-trading does not necessarily render that individual or entity atypical or inadequate at representing the class, reasoning 'where the public market of a quoted security is polluted by false information ... all types of investors are injured.' Oxford, 199 F.R.D. at 124.

See also Andrada v. Atherogenics, Inc., 2005 WL 912359, at * 5 n. 2 (S.D.N.Y. Apr. 19, 2005) ("To the extent that South Ferry attacks May and Michelle Fortunato of the Billings Group as 'day traders' and therefore atypical of the class, the Court notes that South Ferry has failed to identify any substantive concerns that would undermine either plaintiff's ability to represent the class.")

The Court agrees with the cases that hold that a plaintiff's status as a purported "day trader" is not enough in and of itself to rebut the presumption of adequacy. Absent evidence that Schwartz did not rely on the market price of the shares – see, e.g., In re Safeguard Scientifics, 216 F.R.D. 577, 582 (E.D. Pa. 2003) (presumptive lead plaintiff increased his stock holdings even after public disclosure of the alleged fraud) – the Court will not make such a presumption based on the level of his trading activity.

At any rate, based on the evidence before the Court, the Court is not convinced that Schwartz could fairly be considered a "day trader." Schwartz did engage in a large number of transactions – approximately 770 according to Schwartz - over the Class Period. However, the large number of total transactions may be due in part to Schwartz's broker executing single purchase orders through a number of separate purchase transactions throughout the day. (Schwartz Decl. of 1/7/11, ¶ 7.) Schwartz denies that he was a "day-trader" in Arena securities and states that he relied on the integrity of Arena's stock price. (Id. at ¶ 6.) Most of Schwartz's transactions were purchases, not sales. Most importantly, Schwartz retained the majority of his shares.

The presumption that Schwartz is the most adequate lead plaintiff has not been rebutted. Therefore, the Court appoints Schwartz as lead plaintiff.

### c. Lead Counsel Analysis

Under the PSLRA, once the court has designated a lead plaintiff, that plaintiff "shall subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). If the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice. Cohen v. U.S. Dist. Court, 586 F.3d 703, 712 (9th Cir. 2009).

Schwartz asks the court to approve his selection of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as lead counsel. It appears that Kaplan Fox has substantial experience in the area of securities litigation and can fulfill the role of lead counsel. (Ex. D to King Decl.) Therefore, the Court approves Schwartz's choice of counsel and appoints Kaplan Fox as

lead counsel.

### III. CONCLUSION

For the reasons discussed above, the motions to consolidate the Class Actions [10cv1959 - Doc. Nos. 12, 15, 16, 17, 18, 19, 20; 10cv1961 -Doc. No. 10; 10cv1977 - Doc. No. 14; 10cv1984 -Doc. No. 13; 10cv2026- Doc. No. 12; 10cv2086 - Doc. No. 9; 10cv2335 - Doc. No. 10] are **GRANTED**. The Court **CONSOLIDATES** Case Nos. 10cv1959, 10cv1961, 10cv1977, 10cv1984, 10cv2026, 10cv2086, and 10cv2335 for all pretrial proceedings. The caption page on all future filings shall contain all of the captions. All future docketing will be done in Case No. 10cv1959, which shall be the main file.

Defendants' motion to consolidate the Sharp case, 10cv2111, with the Class Actions [10cv2111 - Doc. No. 23] is **DENIED**. However, Magistrate Judge Major shall coordinate discovery in the Sharp case and the consolidated Class Actions, and shall also coordinate briefing schedules and case management dates within her discretion.

The Court **GRANTS** Schwartz's motion [10cv1959 - Doc. No. 18] to be appointed lead plaintiff. The Court appoints Carl Schwartz as lead plaintiff in the consolidated Class Actions. The Court also **GRANTS** Schwartz's motion for approval of lead counsel. The Court appoints Kaplan Fox & Kilsheimer LLP as lead counsel in the consolidated Class Actions.

The Court **DENIES** the remaining motions for appointment as lead plaintiff and for approval of lead counsel.

**IT IS SO ORDERED.**

DATED: August 8, 2011

*Barry Ted Moskowitz*
Honorable Barry Ted Moskowitz
United States District Judge